UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                            Plaintiff,

            - against -

JULIET EUROPE, individually and d/b/a
Brooklyn Exposure; JACQUELINE EUROPE,
Individually and d/b/a Brooklyn Exposure;
WILFRED EUROPE, individually and d/b/a
Brooklyn Exposure; and BROOKLYN
EXPOSURE, INC., an unknown business
entity d/b/a Brooklyn Exposure,

                            Defendants.
-------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

18 CV 5094 (MKB)(CLP)

On September 10, 2018, J & J Sports Productions, Inc. ("plaintiff" or "J&J") commenced

this suit against Juliet Europe, individually and d/b/a Brooklyn Exposure, Jacqueline Europe,

individually and d/b/a Brooklyn Exposure, Wilfred Europe, individually and d/b/a Brooklyn

Exposure, and Brooklyn Exposure Incorporated ("Brooklyn Exposure"), an unknown business

entity d/b/a Brooklyn Exposure (collectively, "defendants"), alleging violations of 47 U.S.C. §§

605 and 553.

Upon the failure of defendants to answer or respond to the Complaint, the Clerk of Court

entered a default against the defendants on December 10, 2018.  The plaintiff moved for default

judgment on February 22, 2019, and the action was subsequently referred to the undersigned by

the Honorable Margo K. Brodie to conduct an inquest and prepare a Report and

Recommendation.

For the foregoing reasons, this Court respectfully recommends that, pursuant to 47 U.S.C.

§§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded damages of

$4,000.00 from the corporate defendant, Brooklyn Exposure Incorporated, but that the default against the individual defendants be vacated.[1]

## FACTUAL BACKGROUND

In the Complaint, plaintiff alleges that, pursuant to a closed-circuit television licensing agreement with Mayweather Promotions, plaintiff retained the exclusive rights to commercially distribute the September 12, 2015 WBA/WBC World Welterweight Championship Fight Program between Floyd Mayweather, Jr and Andre Berto, including all undercard bouts and fight commentary encompassed in the television broadcast of the event (the "Program"), at closed-circuit locations such as theaters, arenas, bars, clubs, lounges, and restaurants throughout New York. (Compl.[2] ¶ 16; Pl.'s Mem. at 1-2; Gagliardi Aff.[3] ¶ 3). These closed-circuit locations could only obtain access to the broadcast by entering into a contractual relationship with plaintiff. (Compl. ¶ 17; Pl.'s Mem. at 2; Gagliardi Aff. ¶ 8).

In order to gain access to the encrypted interstate satellite transmission of the Program, each participating establishment was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal. (Gagliardi Aff. ¶ 11).

Plaintiff alleges that Brooklyn Exposure is a commercial establishment organized under the laws of the State of New York with its principal place of business located at 1401 Bedford Avenue, Brooklyn, New York. (Compl. ¶ 8; Pl.'s Mem. at 2). Defendants Juliet Europe,

---

[1] The Court notes that although the statute authorizes an award of attorneys' fees, see 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff has requested 30 days from the date of judgment to file for fees. (Plaintiff's Memorandum in Support of Application for Default Judgment, dated February 22, 2019 ("Pl.'s Mem."), ECF No. 14-1 at 10).

[2] Citations to "Compl." refer to plaintiff's Complaint, dated September 10, 2018, ECF No. 1.

[3] Citations to "Gagliardi Aff." refer to the Affidavit of Joseph Gagliardi, President of J&J Sports Productions, Inc., dated January 18, 2019, ECF No. 14-2.

Jacqueline Europe, and Wilfred Europe are alleged to be principals or owners with the ability to supervise the activities alleged in the Complaint.  (Compl. ¶¶ 8, 9).

On September 12, 2015, at approximately 11:49 p.m., Gary Joseph, an investigator with Omni Present Investigations, employed by plaintiff, entered Brooklyn Exposure, where he observed the Program being broadcast to patrons of the defendant establishment.  (Joseph Aff.[4] at 1).  Joseph was not required to pay a cover charge to enter the establishment.  (Id.)  Inside, he observed three television sets and approximately 25 patrons on the premises at the time of the broadcast.  (Id. at 1-2).  He represents that upon his arrival at 11:49 p.m., he observed that the sixth round of the match between Mayweather, in black and white trunks, and Berto, in white and silver trunks, was in progress.  (Id. at 1).

Plaintiff asserts that defendants were not authorized to display the Program and that showing the Program was a violation of federal law.  (Compl. ¶¶ 7-14, 19-21; Gagliardi Aff. ¶¶ 3, 7).  Plaintiff further asserts that the Program could not be intercepted "mistakenly, innocently, or accidentally," and has detailed several ways in which the Program could be illegally intercepted.  (Gagliardi Aff. ¶¶ 9, 10(A-E)).

On September 10, 2018, plaintiff commenced this action, seeking statutory damages pursuant to 47 U.S.C. §§ 553 and 605.  Plaintiff served copies of the Summons and Complaint upon the defendants by personal service on Juliet Europe, Jacqueline Europe, and Wilfred Europe, and by authorized person service upon Brooklyn Exposure.  None of the defendants have filed an answer or appeared in this action.

---

[4] Citations to "Joseph Aff." refer to the Affidavit of Gary Joseph, Investigator for Plaintiff, dated September 16, 2015, and submitted as Exhibit 5 to the Declaration of Plaintiff's Counsel Joseph P. Loughlin in Support of Application for Default Judgment ("Loughlin Aff."), dated February 22, 2019, ECF No. 14.

Plaintiff requests an award of $24,000.00 for defendants' willful violation under 47 U.S.C. §§ 605(c)(3)(C)(i)(II) and 605(e)(3)(C)(ii).  (Pl.'s Mem. at 5).  Plaintiff also requests pre- and post-judgment interest at the federal statutory rate.  (Id.)  Additionally, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff is entitled to costs and attorneys' fees.  Plaintiff seeks attorneys' fees and relevant costs but requests that J & J "be granted 30 days from the date the judgment becomes final to submit its Motion for costs and attorneys' fees."  (Id. at 10).

DISCUSSION

A.    Default

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process in which first a default, and then a default judgment, is entered.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  The court clerk automatically enters the default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure by noting the party's default on the clerk's record of the case.  See id.; Fed. R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").

After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered.  See Fed. R. Civ. P. 55(a).  If the amount of damages must be ascertained in order for a default judgment to be entered, the Court may conduct a hearing.  See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95.  Here, plaintiff submitted a request for entry of default dated December 6, 2018.  The Clerk of the Court entered a default on December 10, 2018, and on April 2, 2019, the district court referred the motion for default judgment to the undersigned.

In determining whether a default judgment should be entered, courts have cautioned that a default judgment is an extreme remedy that should only be granted as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance the interest in expediting cases with the court's responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id. at 95-96.  Accordingly, the plaintiff is not entitled to a default judgment as a matter of right, simply because the defendants are in default.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992); see also Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (stating that courts are required to "supervise default judgments with extreme care to avoid miscarriages of justice," and ordering an inquest to determine damages).

The court possesses significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of money potentially involved.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *1-2.  The greater the amount of money involved, the less justification there may be for entering the default judgment.  See id.  Additionally, a court may consider whether material issues of fact remain, see Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012), whether the facts alleged in the complaint state a valid cause of action, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981),

whether plaintiff has been substantially prejudiced by the delay involved, see Arthur F. Williams, Inc. v. Helbig, 208 F.R.D. 41, 44-45 (E.D.N.Y. 2002), and how harsh the effect of a default judgment might be on the defendant.  Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, 10A Federal Practice & Procedure, §§ 2685, 2688 (3d ed. 1998).

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases).  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65.

Plaintiff alleges that the defendants violated 47 U.S.C. §§ 553(a)(1)[5] and 605(a) through the unauthorized reception of plaintiff's satellite communications.  However, a court is not permitted to grant damages under both statutes for a single illegal transmission.  See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008-09 (2d Cir. 1993).  Rather, the Second Circuit has stated that where a defendant is found to have violated both statutes, the court should award damages pursuant to Section 605.  Id.; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 F. App'x 29, 30 (2d Cir. 2007).  Since the Court finds that plaintiff has sufficiently stated a claim for a

---

[5] Section 553(a)(1) provides, in pertinent part, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).

violation of Section 605, the Court has considered plaintiff's request for damages only under Section 605, and not under Section 553.

Here, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605. Section 605(a), which provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person," 47 U.S.C. § 605(a), has been held to apply to the interception of cable communications originating as a satellite or radio transmission. See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131-32 (2d Cir. 1996), cert. denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *4; Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997). Here, defendants' alleged conduct – the unauthorized interception, receipt, and broadcast of the Program from satellite communications – violates this statute.

It is beyond dispute that the corporate defendant, Brooklyn Exposure, is in default because it has not responded to the Complaint.[6]  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"). Moreover, the corporate defendant has not obtained counsel, and failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Continental Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983)

---

[6] The liability of the individual defendants is discussed infra at 8-14.

(discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel). Additionally, unlike those instances where courts have been hesitant to enter default judgment because there were potentially millions of dollars at stake, the amount of money involved in this case is not significant. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, in part because plaintiff's damages request ran "well into the millions of dollars," and giving defendant an opportunity to contest the entry of default).

Here, the corporate defendant did not retain counsel to appear in this action, nor did it file an Answer or otherwise move with respect to the Complaint. The corporate defendant also failed to respond to plaintiff's motion for entry of default judgment and did not contest plaintiff's damages calculations.[7] Accordingly, the Court respectfully recommends that plaintiff's motion for entry of a default judgment be granted as to the corporate defendant.

B.    The Individual Defendants' Liability

To establish a contributory violation of 47 U.S.C. § 605(a), plaintiff is required to demonstrate that an individual defendant has authorized the violations set forth in the Complaint. Garden City Boxing Club, Inc. v. Morales, No. 05 CV 64, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005) (citing cases); see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). "'To establish vicarious liability, . . . [plaintiff] must show that . . . [defendant] had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10 (quoting Kingvision Pay-Per-View, Ltd. v.

_____

[7] As discussed infra, individual defendant Jacqueline Europe did appear pro se during the inquest hearing, but a non-lawyer may not represent a corporate defendant, and a corporation may not appear pro se in this Court.

Olivares, No. 02 CV 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (internal citation omitted)).

The Supreme Court has advised that "formulaic recitation of the elements of a cause of action" is insufficient to establish a prima facie case. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Courts in this district have found that allegations similar to the ones in this case are "nothing more than a formulaic recitation of the elements of a cause of action . . . ." J & J Sports Prods., Inc. v. Orellana, No. 18 CV 2052, 2019 WL 1177719, at *4 (E.D.N.Y. Mar. 13, 2019) (declining to hold individual defendant liable where the plaintiff cited nothing more than defendant's "designation as the owner or principal of [Establishment] on its New York State Liquor Authority-issued license"); see also J & J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946 (E.D.N.Y. Nov. 23, 2016).

There are four defendants in this action: Juliet Europe, Jacqueline Europe, Wilfred Europe, and Brooklyn Exposure. Plaintiff alleges that the individual defendants, Juliet Europe, Jacqueline Europe, and Wilfred Europe, were identified as "principals and/or owners" of the fourth defendant, Brooklyn Exposure on the New York State Liquor Authority License for Brooklyn Exposure. (Compl. ¶¶ 7, 8). The fourth defendant, Brooklyn Exposure Incorporated, operates the commercial establishment doing business as Brooklyn Exposure. (Id. ¶ 8). Plaintiff claims that the individual defendants "directed or permitted the employees of Brooklyn Exposure to unlawfully intercept and broadcast Plaintiff's Program . . . or intentionally intercepted, and/or published the Program at Brooklyn Exposure themselves." (Id. ¶ 11). Plaintiff alleges that the individual defendants "had the right and ability to supervise the activities of Brooklyn Exposure Incorporated which included the unlawful interception." (Id. ¶ 9). Plaintiff also alleges that

defendants Juliet Europe, Jacqueline Europe, and Wilfred Europe had "an obvious and direct financial interest in the activities of Brooklyn Exposure . . . ."  (Id. ¶ 12).

Since Juliet Europe, Jacqueline Europe, and Wilfred Europe have defaulted in this action, plaintiff's allegations remain unchallenged and must be accepted as true.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  The Court need not accept as true, however, the allegations in the Complaint that constitute legal conclusions.  See J & J Sports Productions Inc. v. Inga, No. 18 CV 2542, 2019 WL 1320278, at *5 (Mar. 22, 2019) (declining to accept as true allegations in the Complaint that individual defendants "had the right and ability to supervise the activities" of the establishment, "which included the unlawful interception").

Plaintiff is seeking to hold the individual defendants responsible for the broadcast by pointing to their positions as "principals and/or owners" of corporate defendant Brooklyn Exposure as listed on the corporate defendant's New York State Liquor Authority License. (Compl. ¶¶ 7, 8).  Based on this fact alone, plaintiff claims that the individual defendants "had the right and ability to supervise" the activities of the corporate defendant on the night of September 12, 2015.  (Id. ¶ 9).  Plaintiff further relies on the role of the individual defendants as listed on the liquor authority license to argue that the individual defendants "had an obvious and direct financial interest in the activities of Brooklyn Exposure."  (Id. ¶ 12).

However, apart from the affidavit from plaintiff's investigator, and the allegations in the Complaint and the motion for default judgment, there are no additional factual allegations to provide support for the claim that any of the individual defendants controlled or actually supervised the actions of Brooklyn Exposure on the night of September 12, 2015.

The Court finds that plaintiff has failed to establish that the individual defendants was liable under either a theory of contributory liability or vicarious liability.  Plaintiff claims that

since the individual defendants were listed as "principals and/or owners" of the corporate

defendant on the corporate defendant's New York State Liquor Authority License, therefore the

individual defendants had supervisory control over Brooklyn Exposure and had an obvious and

direct financial interest in the showing of the Program at Brooklyn Exposure.  (Id. ¶¶ 7, 8).

However, being an officer or director of the corporation "does not necessarily imply the

authority to direct an infringement." J & J Sports Productions, Inc v. James, No. 17 CV 5359,

2018 WL 3850731, at *5 (E.D.N.Y. Jul. 25, 2018).  Courts in this district have found that

allegations such as those at issue here are insufficient to establish individual liability, and have

required plaintiff to "allege nonformulaic facts setting forth the Individual Defendant's right and

ability to supervise or his participation in or knowledge of the activities, as well as Defendant's

financial interest in the unlawful broadcast." J & J Sports Productions v. Abdelraouf, No. 18 CV

2547, 2018 WL 7916309, at *7 (E.D.N.Y. Nov. 21, 2018).

 In the Complaint, plaintiff does not "identify any actions specifically taken" by any one

of the individual defendants.  See, e.g., J & J Sports Productions, Inc. v. 291 Bar and Lounge,

648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) (declining to impose individual liability because

plaintiff failed to provide specific allegations in regards to the alleged conduct and noting that

"to the extent that J & J wishes to assert liability against an individual in the future, it should

make adequately detailed allegations in the complaint, beyond the conclusory and vague charge

of mere ownership of the offending entity"); J & J Sports Productions, Inc. v. Shots Pool Hall,

Inc., No. 16 CV 5067, 2018 WL 1115915, at *2 (E.D.N.Y. Feb. 6, 2018) (finding the

complaint's allegations of individual liability to be insufficient because the individual

defendant's specific actions were not identified).

Furthermore, officers of a corporation are not generally liable for the wrongful acts of the corporation "unless they participate in or have knowledge of such acts." Garden City Boxing Club, Inc. v. Paquita's Café, Inc., No. 06 CV 6953, 2007 WL 2783190, at *2 (S.D.N.Y. Sept. 26, 2007). The Court cannot simply infer from the individual defendants' titles that they were "positioned to supervise the infringing broadcast, or directly participated in, authorized, or ha[d] knowledge of the violation." J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15 CV 3771, 2017 WL 933079, at *3 (E.D.N.Y. Mar. 8, 2017); see also J & J Sports Prods., Inc. v. Daley, No. 06 CV 238, 2007 WL 7135707, at *4 (E.D.N.Y. Feb. 15, 2007) (holding that "logic does [not] support the inference that Daley as an officer, director, shareholder and/or principal of Kev's had the kind of control J & J asserts") (internal quotations omitted).

Thus, the Court finds that plaintiff's allegations are insufficient to permit the Court to find that the individual defendants had the right or ability to supervise the infringing activities. See J & J Sports Prods., Inc. v. Orellana, 2019 WL 1177719, at *4 (declining to hold individual defendant liable where the plaintiff cited nothing more than defendant's "designation as the owner or principal of [Establishment] on its New York State Liquor Authority-issued license").

Plaintiff has also not established that the individual defendants had "an obvious and direct financial interest in the activities of Brooklyn Exposure . . . ." (Compl. ¶¶ 9, 12). See J & J Sports Productions, Inc. v. El Ojo Aqua Corp., No 13 CV 6173, 2014 WL 4700014, at *4 (E.D.N.Y. Aug. 24, 2014) (finding that "the fact that [the corporate defendant's] liquor license lists [the individual defendant] as its principal . . . does nothing to suggest that . . . [the individual defendant] had an obvious and direct financial interest" in the infringing activity); J & J Sports Productions, Inc. v. James, 2018 WL 3850731, at *5 (noting that plaintiff's "burden requires

showing that [the individual defendant] benefited from the unauthorized reception of the Event through either direct or strong indirect evidence of financial gain").

Courts have found sufficient evidence of financial gain in situations where there was a cover charge to enter the establishment, the event was publicly advertised, or where there were a significant number of patrons present for the unauthorized broadcast.  See, e.g., id. at *5 (holding defendants vicariously liable where the establishment had a $20 cover charge and 62 patrons); J & J Sports Productions, Inc. v. LX Food Grocery, 2016 WL 6905946, at *3; J & J Sports Productions v. McAdam, No. 14 CV 5461, 2015 WL 8483362, at *3 (E.D.N.Y. Dec. 9, 2015) (finding individual defendants vicariously liable where the establishment charged a $20 cover charge and had approximately 100 patrons); J & J Sports Productions v. Tellez, No. 11 CV 2823, 2011 WL 6371521, at *2 (E.D.N.Y. Dec. 20, 2011) (finding evidence of financial gain where 85 patrons were present watching the infringing content in a bar).  Here, plaintiff did not present any evidence of a cover charge, or advertising of the event, and only 25 patrons were present.  See J & J Sports Productions, Inc. v. Orellana, 2019 WL 1177719, at *4 (finding individual defendants not vicariously liable where the establishment had no cover charge and no further evidence of financial gain).

Thus, the Court respectfully recommends that the individual defendants not be found liable.  Courts in this district have found that because allegations similar to those in the instant case are not sufficient to state a plausible claim of individual liability, grounds existed to vacate the entry of default and dismiss the complaint as to individual defendants.  See, e.g., J & J Sports Productions, Inc. v. Inga, 2019 WL 1320278, at *6 (vacating entry of default as to individual defendants when allegations listed them as "directors or officers" with the "right to supervise the activities" of the establishment without evidence of direct of obvious financial gain); J & J

<u>Sports Productions, Inc. v. Orellana</u>, 2019 WL 1177719, at *4 (denying a motion for default judgment as to individual defendant where the only allegations list the individual defendant as a principal or owner of the establishment on the New York State Liquor License without evidence of direct or obvious financial gain); <u>J & J Sports Productions, Inc. v. Los Toritos Bar Restaurant, Inc.</u>, No. 15 CV 6517, 2017 WL 4838819, at *4 (E.D.N.Y. Sept. 11, 2017), <u>report and recommendation adopted</u>, 2017 WL 4838758 (E.D.N.Y. Oct. 24, 2017) (recommending that default judgment be denied as to the individual defendants); <u>J & J Sports Productions, Inc. v. Johnny's Restaurant</u>, No. 15 CV 6645, 2016 WL 8254906, at *4 (E.D.N.Y. Dec. 15, 2016), <u>report and recommendation adopted</u>, 2017 WL 591143 (E.D.N.Y. Feb. 14, 2017) (same); <u>J & J Sports Productions, Inc. v. El Ojo Aqua Corp.</u>, 2014 WL 4700014, at *4 (vacating an entry of default when the allegations only listed individual defendants as a "Principal" of the establishment without providing evidence of direct or obvious financial gain).

Accordingly, the Court respectfully recommends that the entry of default against the individual defendants be vacated and that the individual defendants not be held liable for any monetary damages.[8]

---

[8] Some courts in this district have found that similar allegations were sufficient to hold an individual defendant vicariously liable.  <u>See, e.g.</u>, <u>Joe Hand Promotions, Inc. v. Blais</u>, No. 11 CV 1214, 2013 WL 5447391, at *3 (E.D.N.Y. Sept. 30, 2013) (finding individual defendant vicariously liable); <u>J & J Sports Productions, Inc. v. Benson</u>, No. 06 CV 1119, 2007 WL 951872, at *2 (E.D.N.Y. Mar. 27, 2007) (same); <u>Garden City Boxing Club, Inc. v. Morales</u>, 2005 WL 2476264, at *10 (same).  However, because the plaintiff has not even asserted which of the individual defendants had sufficient control or a financial interest in the violation, the Court declines to recommend that the individual defendants in this case be held vicariously liable.

C.    <u>Damages</u>

Unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment.  The burden is on the plaintiff to establish its entitlement to recovery "in an evidentiary proceeding in which the defendant has the opportunity to contest the amount."  <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d at 158.  While "the court must ensure that there is a basis for the damages specified in the default judgment, it may, but need not, make the determination through a hearing."  <u>Fustok v. Conticommodity Servs., Inc.</u>, 122 F.R.D. 151, 156 (S.D.N.Y. 1988), <u>aff'd</u>, 873 F.2d 38 (2d Cir. 1989).  Here, the Court has reviewed plaintiff's affidavits and exhibits pertaining to the damages incurred, and also conducted an inquest hearing on June 13, 2019.

1.    <u>Statutory Damages</u>

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages.  47 U.S.C. § 605(e)(3)(C)(i).  In this instance, plaintiff has elected to recover statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  (Pl.'s Mem. at 5; <u>see</u> Gagliardi Aff. ¶ 14).[9]

Section 605 provides for penalties "for <u>each</u> violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ."  47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added).  Although Section 605 requires the court to assess damages based on each "violation" of the statute, there is no statutory definition of "violation."

---

[9] As noted above, <u>see</u> discussion <u>supra</u> at 6-7, a plaintiff may only recover damages under one statute when there is a single illegal transmission.  <u>See</u> <u>International Cablevision, Inc. v. Sykes</u>, 997 F.2d at 1009.  Therefore, in accordance with Second Circuit precedent, the Court recommends that plaintiff receive an award of damages pursuant to Section 605.  <u>Id.</u>; <u>see also</u> <u>Garden City Boxing Club, Inc. v. Polanco</u>, 2006 WL 305458, at *5.

See Garden City Boxing Club, Inc. v. Rosado, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005). Moreover, in cases such as this, involving the theft of services by a commercial establishment, it is often difficult to assess a precise figure. However, most cases applying this statute in a commercial context have interpreted the showing of a single event on a single night as one violation. See, e.g., id.; Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111.

In determining the amount of damages that may be imposed for each violation within the range of $1,000 to $10,000 per violation, Section 605 leaves the decision within the sound discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II); see also Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (reducing an award from $250,000 to $10,000 for commercial broadcast of a boxing match); Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. at 111 (citing cases). The factors to be considered in determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (interpreting 47 U.S.C. § 553)); see also J & J Sports Productions, Inc. v. Mangos Steakhouse & Bakery, No. 13 CV 5068, 2014 WL 2879868, at *6 (E.D.N.Y. May 7, 2014); Entertainment by J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating lost profits, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment. See, e.g., Kingvision Pay-Per-View Ltd. v. Rodriguez, No. 02 CV 7972, 2003

16

WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003) (awarding statutory minimum where plaintiff failed to establish any actual damages because plaintiff did not submit evidence of the cost of the license fee for defendants to broadcast the boxing event legally); Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding flat damage amount "based on the Court's view of the equities and not the estimate of the number of patrons"); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. at 484 (awarding statutory damages of $10,000 where it found the statutory maximum of $250,000 to be excessive).

Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast.  See, e.g., Garden City Boxing Club v. Rosado, 2005 WL 3018704, at *3-4 (multiplying the number of patrons present at the unauthorized broadcast by the residential charge for the pay-per-view event being shown, $54.95); Top Rank Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron); Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 WL 2022522, at *3 (same); Time Warner Cable of New York City v. Googies Luncheonette, Inc. ("Googies"), 77 F. Supp. 2d 485, 489-90 (S.D.N.Y. 1999) (same); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111 (same); Cablevision Sys. Corp. v. 45 Midland Enters., Inc., 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

In this case, plaintiff contends that it has suffered a loss of $2,000.00, which is the amount that plaintiff would have received had defendants entered into a contract with plaintiff to broadcast the Program.  (Pl.'s Mem. at 8; Gagliardi Aff. ¶ 8, Ex. 2).  Apart from the actual damages that plaintiff has calculated, plaintiff asserts more specifically that signal piracy causes a reduction in its lawful business because of the "perceived lack of significant consequences" for

17

such behavior.  (Gagliardi Aff. ¶ 13).  Plaintiff claims its business suffers as a result of signal piracy costing the company, its customers, and their communities.  (Gagliardi Aff. ¶ 13). Further, plaintiff argues there is a "reasonable presumption" that defendants obtained additional profits as a result of the illegal showing of the Program.  (Pl.'s Mem. at 8).

Plaintiff requests statutory damages of $6,000, representing three times the amount that Brooklyn Exposure would have paid for authorization to broadcast the Program lawfully.  (See Pl.'s Mem. at 8).  Plaintiff contends that neither of the two typical methods of calculating damages should be used in this case, and that the Court should instead award a higher amount, because such award failed to compensate plaintiff adequately and would create a "perverse incentive for an individual to attempt to break the law."  (Id. at 8-9).

2.  Application

Where there is uncontradicted evidence of the number of patrons viewing an unauthorized program in an establishment, some courts have calculated the award of damages by multiplying the individual residential rate to receive the transmission by the number of patrons present, and adding to this any other cover charges and profits that can be attributed to the unauthorized viewing.  J & J Sports Prods., Inc. v. LDG Williams, LLC, No. 11 CV 2145, 2011 WL 5402031, at *3 (E.D.N.Y. Jul. 27, 2018); see also J & J Sports Prods., Inc. v. Arhin, No. 07 CV 2875, 2009 WL 1044500, at *1 (E.D.N.Y. April 17, 2009).  However, that amount fails to approach the actual lost revenues to plaintiff.  Plaintiff has stated that lost revenues in this case equal $2,000.00, based on the fee that would normally be charged to a commercial establishment with a capacity of 1-100 persons.  (Pl.'s Mem. at 8).

Awarding the plaintiff $2,000.00 in lost revenues constitutes an award greater than the statutory minimum of $1,000.  See 47 U.S.C. § 605(e)(3)(C)(ii); Kingvision Pay-Per-View Ltd.

18

v. Autar, 426 F. Supp. 2d 59, 63-64 (E.D.N.Y. 2006) (awarding $1,000 where multiplying the number of patrons by $50 would lead to a total less than the statutory minimum); see also J & J Sports Prods., Inc. v. LGD Williams, LLC, 2011 WL 5402031, at *4 (explaining that "courts use per-patron calculations as a 'starting point' for calculating damages . . . rather than as an exhaustive analysis where the sum of per-patron damages is less than the fee that an establishment would have paid for a sublicense to broadcast the event") (citations omitted). Here, where there has been no evidence of repeat violations, and no evidence that the defendants exhibited the match for commercial gain, the Court finds that an award of $2,000.00 constitutes "sufficient deterrence," and thus, the Court respectfully recommends that plaintiff be awarded $2,000.00 in statutory damages. Other courts in this district have calculated damages by multiplying the residential rate by the number of patrons present, and then adding that amount to the licensing fee. See, e.g., J & J Sports Prods., Inc. v. The Afrikan Poetry Theatre, Inc., No. 17 CV 2196, 2018 WL 1725692 (E.D.N.Y. Apr. 10, 2018). However, the plaintiff did not provide the court with the residential rate in this case, asserting that "as this is a default case, Plaintiff cannot calculate the profits for the Defendant." (Pl.'s Mem. at 8).

In this case, plaintiff asked the court not to use either of the approaches discussed above, but rather to award statutory damages based on three times the licensing fee. Plaintiff cites a variety of cases outside this district and circuit where courts have used this method. See, e.g., J & J Sports Prods., Inc. v. Tonita Rest., LLC, No. 13 CV 0382, 2015 WL 9462975 (E. D. Ky. Dec. 28, 2015); Joe Hand Promotions, Inc. v. Sheedy, No. 08 CV 1797, 2011 WL 4089534 (D. S. C. July 29, 2011). As plaintiff noted, previous approaches by courts in the Second Circuit would award statutory damages equivalent to the sublicensing fee of $2,000.00. (Pl.'s Mem. at 8) (see discussion supra at 16-17). Although the Court has reviewed these out-of-circuit cases

cited by plaintiff, the Court respectfully recommends applying the methodology typically used to calculate statutory damages in the Second Circuit, which would result in an award of $2,000.00 in statutory damages.

   3.  Enhanced Damages for Willfulness

   Plaintiff also seeks enhanced statutory damages pursuant to Sections 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii), providing for additional awards of up to a maximum of $100,000.00 for all willful violations.  (Pl.'s Mem. at 5, 9-10).  The statute permits enhanced damages where the violation was committed willfully and for purposes of private financial gain.  See, e.g., Entertainment by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (awarding statutory damages of $5,000, increased by $10,000 for willfulness under 47 U.S.C. § 605(e)(3)(C)(ii), where defendant displayed a boxing match to eighteen patrons in his bar); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12 (awarding statutory damages of $3,750, increased by $5,000 for willfulness under section 605(e)(3)(C)(ii), where defendant displayed a boxing match to seventy-five people inside and twenty people outside his restaurant).  This section clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to their patrons.  See id.

   In determining whether an enhanced award for willful conduct is warranted, some precedents suggest that the simple fact the Program was intercepted and broadcast without permission is an indication of willfulness.  See, e.g., J & J Sports Prods., Inc. v. Big Daddy's Theme Palace, No. 14 CV 2765, 2015 WL 58606, at *4 (E.D.N.Y. Jan. 5, 2015); J & J Sports Prods., Inc. v. Nest Restaurant & Bar, Inc., No. 17 CV 2194, 2018 WL 4921657, at *8 (E.D.N.Y. July 17, 2018).  Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'"  ON/TV of Chicago v. Julien,

763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111,

127 (1985)).  Courts also consider five factors to determine whether willful conduct warrants an

award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant

actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant;

(iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or

premiums for food and drinks."  See J & J Sports Prod., Inc. v. LX Food Grocery Inc., 2016 WL

6905946, at *5 (citations and internal quotation marks omitted).

     In determining the enhanced damages for willful conduct, courts take varying

approaches.  Some courts have awarded treble damages for willful violations.  See, e.g., J & J

Sports Prods., Inc. v. Hot Shots, Inc., No. 09 CV 1884, 2010 WL 3522809, at *3 (E.D.N.Y. Apr.

27, 2010) (awarding plaintiff an enhancement of three times the statutory damages award of

$2,747.50, or $8,242.50, for willfulness, for a total award of $10,990); J & J Sports Productions,

Inc. v. Benson, 2007 WL 951872, at *5 (awarding statutory damages of $1,200, plus enhanced

damages of $3,600, for a total of $4,800 where plaintiff did not advertise the event, charged no

cover, and five patrons were present); J & J Sports Prods., Inc. v. Forbes, No. 07 CV 4394, 2008

WL 5263732, at *1 (E.D.N.Y. Dec. 17, 2008) (awarding $1,000 in statutory damages and $3,000

in enhanced statutory damages for willfulness, for a total of $4,000.00); J & J Sports Prods., Inc.

v. Drake, No. 06 CV 246, 2006 WL 2927163, at *5 (E.D.N.Y. Oct. 11, 2006) (same).

     Other courts have doubled the statutory damage award to arrive at enhanced damages.

See, e.g., J & J Sports Prods., Inc. v. Onyx Dreams, Inc., No. 12 CV 5355, 2013 WL 6192546, at

*6-7 (E.D.N.Y. Nov. 26, 2013) (awarding enhanced damages of $9,011.80, or two times the

statutory damages of $4,505.90, for a total of $13,517.70, where plaintiff was not paid a

licensing fee and defendant charged a cover fee of $20); Joe Hand Promotions, Inc. v. Elmore,

No. 11 CV 3761, 2013 WL 2352855, at *8 (E.D.N.Y. May 29, 2013) (awarding $1,538.60 in statutory damages plus two times that, $3,077.20 in enhanced damages, for a total award of $4,615.80); Garden City Boxing Club, Inc. v. 135 Hunt Station Billiard, Inc., No. 07 CV 3849, 2012 WL 4328355, at *5 (E.D.N.Y. June 21, 2012) (awarding $4,396.00 in enhanced damages, plus statutory damages of $2,198.00, where violations were willful but there was no evidence of past or future violations), report and recommendation adopted, 2012 WL 4328347 (E.D.N.Y. Sept. 19, 2012); J & J Sports Prods., Inc. v. Tellez, 2011 WL 6371521, at *6 (E.D.N.Y. Dec. 20, 2011) (awarding $4,670.75 in statutory damages plus two times that amount or $9,341.50, representing enhanced damages where plaintiff showed no evidence of prior violations and where the revenues defendant earned were unclear).

Still other courts have awarded enhanced damages in an amount equal to that awarded for statutory damages. See, e.g., J & J Sports Prods. Inc. v. Orellana, 2019 WL 1177719, at *7 (awarding statutory damages of $3,000 and enhanced damages of $3,000); J & J Sports Prods. Inc. v. Johnny's Restaurant, Bar & Lounge Inc., 2016 WL 8254906, at *7 (E.D.N.Y. Dec. 15, 2016) (awarding damages of $3,297 and enhanced damages of $3,297); J & J Sports Prods., Inc. v. LDG Williams, LLC, 2011 WL 5402031, at *1 (awarding statutory damages of $2,534.15 and enhanced damages of $2,534.15 for willfulness); Entertainment by J & J, Inc. v. Friends II, Inc., No. 02 CV 585, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003) (awarding statutory damages of $2,500 and enhanced damages of $2,500); Entertainment by J & J Inc. v. Nina's Rest. & Catering, No. 01 CV 5483, 2002 WL 1000286, at *3 (S.D.N.Y. May 9, 2002) (same).

Finally, sometimes a court awards no enhancement. See, e.g., J & J Sports Prods., Inc. v. Martinez, No. 07 CV 3455, 2009 WL 1913239, at *2 (E.D.N.Y. June 30, 2009) (awarding $3,000 in statutory damages and zero enhanced damages for an establishment with 40 patrons

where plaintiff failed to show "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [or] defendant's charging a cover charge or charging premiums for food and drinks" (internal quotation marks and citation omitted)); J & J Sports Prods., Inc. v. Monte Limar Sports Bar, 2017 WL 933079, at *5 (E.D.N.Y March 8, 2017) (awarding $2,200 in statutory damages and zero in enhanced damaged because, although there were 100 patrons present, the court found no evidence of significant profit or commercial advantage); J & J Sports Productions, Inc. v. LX Food Grocery, Inc., 2016 WL 6905946, at *5 (awarding $2,200 in statutory damages and zero in enhanced damages where the auditor observed five patrons in the Establishment and the court found no evidence of commercial benefit); J&J Sports Prods., Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *5-6 (E.D.N.Y. May 16, 2006) (awarding $2,500 statutory damages and zero enhanced damages for a barbershop in which five patrons were present because there was no evidence that defendants exhibited the Event for commercial advantage).

Plaintiff alleges that defendants intercepted and broadcasted the Program without entering into a licensing agreement with plaintiff or paying fees to plaintiff. To accomplish this, defendants could have utilized an unauthorized decoder, illegally transferred an authorized decoder to the location, illegally altered cable service to bring the signal to the defendant's establishment or misrepresented the commercial establishment as a residential property to allow purchase of the Program at the residential price. (See Gagliardi Aff. ¶ 10). The defendants then broadcast the Program to their patrons.

While plaintiff's allegations support a finding that defendant's conduct was willful, and plaintiff has alleged that signal piracy has resulted in losses in revenue, plaintiff has failed to

allege what those losses might be; it has also failed to show that the defendants exhibited the match for commercial gain. Even though there were 25 patrons present at the time the investigator viewed the Program, there was no evidence that a cover charge was collected. Nor has plaintiff alleged that the defendant has repeatedly violated the statute. (See Joseph Aff.). To the extent that defendant's failure to pay for a license constitutes "actual damages," that cost is already factored into plaintiff's statutory damages award. Given plaintiff's undisputed allegations in support of a finding that the defendant had to have acted willfully to intercept the Program, but plaintiff's failure to identify any other factors warranting further enhancement, the Court recommends an additional award of $2,000.00 for the willfulness of this violation.[10]

This amount is in line with previous awards made by courts in the Eastern and Southern Districts of New York. See, e.g., Joe Hand v. Kings Point Restaurant, No. 17 CV 1870, 2017 WL 6611571 (E.D.N.Y. 2017) (awarding plaintiff a total of $4,555 in damages for an establishment where approximately twenty patrons were present); J & J Sports Productions, Inc. v. Benson, 2007 WL 951872, at *5 (awarding plaintiff a total of $4,800 in damages when 5 patrons were present); J & J Sports Productions, Inc. v. Orellana, 2019 WL 1177719, at *6 (awarding plaintiff $3,000 in statutory damages based on the legal licensing fee and $3,000 in enhanced damages where 25-35 patrons were present).

---

[10] One court in this district has noted that it is conceivable that a small business owner could accidentally sign up for residential cable service, or that an error on the part of a cable service provider could lead to a business being improperly categorized as a residence, thereby bringing into question whether or not a defendant willingly committed the violation. See J & J Sports Prod., Inc. v. Louisias, 2006 WL 1662608, at *4. However, given that in this case defendant has defaulted, this Court declines to speculate as to potential excuses for what appears to be a willful interception of the Program.

Accordingly, the Court respectfully recommends that the district court approve the total recommended statutory damages of $4,000.00 as sufficient to compensate plaintiff and to deter future illegal conduct on the part of defendant.

### 3. Prejudgment Interest

Plaintiff also requests prejudgment interest at the federal statutory rate.  (Pl.'s Mem. at 18).  Section 605 does not provide a statutory basis for such an award of interest.  See Entertainment by J&J Inc. v. Miraldo Rest., Inc., No. 01 CV 10832, 2003 U.S. Dist. LEXIS 11361, at *16 (S.D.N.Y. Apr. 23, 2003), report and recommendation adopted, 2003 U.S. Dist. LEXIS 9624, at *4-5 (S.D.N.Y. June 10, 2003); see also DIRECTV, Inc. v. Montes, 338 F. Supp. 2d 352, 356 (D. Conn. 2004); DIRECTV, Inc. v. Getchel, No. 3:03 CV 2073, 2004 WL 1202717, at *4 (D. Conn. May 26, 2004).  The district court may nevertheless choose to award pre-judgment interest.  See Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc., 67 F.3d 1063, 1071 (2d Cir. 1995) (holding that "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted 'are matters confided to the district court's broad discretion'") (citation omitted).  "The Second Circuit has recognized that pre-judgment interest may be permitted in the absence of express statutory authorization 'when the awards were fair, equitable and necessary to compensate the wronged party fully.'"  Garden City Boxing Club, Inc. v. Rojas, No. 05 CV 1047, 2006 WL 3388654, at *9 (E.D.N.Y. Nov. 21, 2006) (quoting Wickham Contracting Co., Inc. v. Local Union No. 3, 955 F.2d 831, 836 (2d Cir. 1992)).

However, pre-judgment interest is generally awarded only in "exceptional cases."  Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990) (internal quotation marks and citation omitted).  Plaintiff has not provided any reason for awarding pre-judgment interest under the circumstances, and since the Court finds that plaintiff has been

sufficiently compensated, the Court respectfully recommends that pre-judgment interest not be awarded.

D.   <u>Plaintiff's Attorneys' Fees and Costs</u>

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorneys' fees.  <u>See</u> 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails"); <u>see also</u> <u>Int'l Cablevision v. Sykes</u>, 997 F.2d at 1009.  Plaintiff requests "that it be granted 30 days from the date the judgment becomes final to submit its Motion for costs and attorneys' fees."  (Pl.'s Mem. at 10).  This practice of submitting a motion for fees and costs following the order of the district court has been accepted in this district.  <u>See</u> <u>J & J Sports Productions, Inc. v. Reynolds</u>, No. 18 CV 2540, 2019 WL 1299408, (E.D.N.Y. Jan. 11, 2019), <u>report and recommendation adopted</u>, 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019) (recommending that plaintiff be permitted to file a separate motion with attorneys' fees and costs within 30 days after the district judge's order on the report and recommendation); <u>J & J Sports Productions, Inc. v. Guncay</u>, No. 18 CV 2097, 2018 WL 6313210, at *5 (E.D.N.Y. Oct. 17, 2018), <u>report and recommendation adopted</u>, 2018 WL 6308773 (Dec. 3, 2018) (same); <u>J & J Sports Productions, Inc. v. Brown</u>, No. 18 CV 2489, 2019 WL 612225 (E.D.N.Y. Jan. 10, 2019), <u>report and recommendation adopted</u>, 2019 WL 591544 (E.D.N.Y. Feb. 13, 2019) (same).

The Court therefore respectfully recommends that plaintiff be permitted to submit a motion for attorneys' fees, including an affidavit and contemporaneous time records establishing the amount of attorneys' fees and costs it seeks to recover, 30 days from the date this Report and Recommendation is ruled upon.  <u>See</u> <u>J & J Sports Productions, Inc. v. Alvarez</u>, No. 07 CV 8852,

2009 WL 3096074, at *7 (S.D.N.Y. Sept. 25, 2009) (declining to award plaintiff attorney's fees because of the failure to keep contemporaneous time records).

CONCLUSION

Accordingly, this Court respectfully recommends that plaintiff be awarded $4,000.00 in statutory and enhanced damages from defendant Brooklyn Exposure, and that plaintiff be permitted to submit a motion for attorneys' fees 30 days from the date this Report and Recommendation is ruled upon.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onandaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated: Brooklyn, New York
      August 9, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York