UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

J & J SPORTS PRODUCTIONS, INC.,              NOT FOR PUBLICATION

                Plaintiff,              **MEMORANDUM & ORDER**
                                            18-CV-5094 (MKB) (CLP)

        v.

JULIET EUROPE, individually and d/b/a
Brooklyn Exposure, JACQUELINE EUROPE,
individually and d/b/a Brooklyn Exposure;
WILFRED EUROPE, individually and d/b/a
Brooklyn Exposure; and BROOKLYN
EXPOSURE, INC., an unknown business
entity d/b/a Brooklyn Exposure,

                Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff J & J Sports Productions, Inc. commenced the above-captioned action on

September 10, 2018, against Defendants Juliet Europe, Jacqueline Europe, Wilfred Europe (the

"Individual Defendants") individually and doing business as Brooklyn Exposure, and Brooklyn

Exposure, Inc. ("Brooklyn Exposure"), pursuant to the Federal Communications Act of 1934, as

amended, 47 U.S.C. §§ 553 and 605 ("FCA"), alleging unlawful interception and broadcast of

the September 12, 2015 WBA/WBC World Welterweight Championship Fight Program between

Floyd Mayweather, Jr. and Andre Berto (the "Event"). (Compl. ¶¶ 7–63, Docket Entry No. 1.)

On December 6, 2018, Plaintiff filed a request for a certificate of default after Defendants failed

to appear, answer, or otherwise respond to the Complaint and Summons. (Request for

Certificate of Default, Docket Entry No. 12.) The Clerk of Court noticed the default on

December 10, 2018. (Clerk's Entry of Default, Docket Entry No. 13.) On February 22, 2019,

Plaintiff moved for default judgment against Defendants, seeking statutory damages and

enhanced damages totaling $24,000, plus pre- and post-judgment interest. (Pl. Mot. for Default. J. ("Pl. Mot."), Docket Entry No. 14; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 14-1.) On April 2, 2019, the Court referred Plaintiff's motion to Magistrate Judge Cheryl Pollak for a report and recommendation. (Order dated April 2, 2019.)

By report and recommendation dated August 9, 2019 (the "R&R"), Judge Pollak recommended that the Court grant the motion as to Defendant Brooklyn Exposure and enter an award in favor of Plaintiff in the amount of $4,000, but deny the motion as to the Individual Defendants, dismiss the claims against them, and vacate the entry of default against them. (R&R 1–2, Docket Entry No. 20.) On August 23, 2019, Plaintiff timely filed partial objections to the R&R. (Pl. Obj. to R&R ("Pl. Obj."), Docket Entry No. 21.)

For the reasons set forth below, the Court adopts the R&R in its entirety, except as to the recommendation to vacate the entry of default, and grants in part and denies in part Plaintiff's motion for default judgment.

## I. Judge Pollak's recommendations

Judge Pollak recommended that the Court grant the motion for default judgment as to Brooklyn Exposure because Brooklyn Exposure intercepted, received, and divulged an unauthorized satellite communication of the Event in violation of section 605(a) of the FCA.[1] (R&R 7–8.)

In addition, Judge Pollak recommended that the Court deny the motion for default judgment as to the Individual Defendants and that the entry of default against them be vacated because Plaintiff failed to establish that any of the Individual Defendants was either contributorily or vicariously liable for the unauthorized broadcast. (*Id.* at 8–14.) Judge Pollak

---

[1] The pertinent factual background can be found in the R&R.

found that Plaintiff failed to adequately allege that the Individual Defendants controlled or actually supervised the actions of Brooklyn Exposure on September 12, 2015. (*Id.* at 10.) She also rejected the application of vicarious liability, finding the evidence insufficient to support the allegations that the Individual Defendants had the right and ability to supervise the infringement or had a direct financial interest thereof. (*Id.* at 12.)

As to damages, Judge Pollak recommended that the Court award $2,000 in statutory damages and $2,000 in enhanced damages against Brooklyn Exposure. (*Id.* at 24.) Judge Pollak also recommended that the Court deny prejudgment interest because (1) the FCA does not provide for it and (2) Plaintiff failed to demonstrate that the facts warrant discretionary prejudgment interest. (*Id.* at 25–26.) Lastly, Judge Pollak recommended that the Court permit Plaintiff to submit a motion for attorneys' fees, including an affidavit and contemporaneous time records establishing the amount of attorneys' fees and costs it seeks to recover. (*Id.* at 26.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1

(E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

## ii. Default judgment

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The entry of a default, while establishing liability, 'is not an admission of damages.'" *Id.* at 128 (citing *Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009)). "[T]he court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *LG Funding, LLC v. Florida Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) ("To determine whether the default

judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))).  However, the Second Circuit has an "oft-stated preference for resolving disputes on the merits," *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993), and therefore "[a] plaintiff is not entitled to default judgment as a matter of right, merely because a party has failed to appear or respond," *LG Funding, LLC*, 2015 WL 4390453, at *2 (citing *Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)).

### b. Unopposed portions of the R&R

No party has objected to the recommendation that the Court: (1) grant default judgment against Brooklyn Exposure; (2) deny prejudgment interest; and (3) permit Plaintiff to submit a motion for attorneys' fees and costs.

Having reviewed these recommendations for clear error and finding none, the Court adopts these recommendations in their entirety pursuant to 28 U.S.C. § 636(b)(1).[2]

### c. Plaintiff's objections to the R&R

Plaintiff objects to Judge Pollak's recommendation that the Court: (1) deny default judgment against the individual Defendants and vacate the entry of default against them, (2) award Plaintiff only $2,000 in statutory damages, and (3) award Plaintiff only $2,000 in

---

[2] In reviewing the recommendations as to liability, the Court considers documents that were incorporated by reference into the Complaint.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (citations omitted)); *see also Gesualdi v. Interstate Masonry Corp.*, No. 12-CV-0383, 2014 WL 1311709, at *3 (E.D.N.Y. Mar. 28, 2014) (considering, on motion for default judgment, contracts submitted with plaintiff's default judgment motion that were incorporated by reference in the complaint).

enhanced damages.

### i. Liability as to the Individual Defendants

Plaintiff contends that the Complaint provides allegations sufficient to establish individual liability, (Pl. Obj. 3–6), and that even if the allegations are insufficient to confer individual liability, the vacatur of entry of default is unnecessary at this time (*id.* at 7).

The FCA regulates radio and cable wire transmissions. 47 U.S.C. § 151 *et seq.* Section 605(a) provides in relevant part that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents of such intercepted communications to any person." 47 U.S.C. § 605(a). Section 553(a)(1) also provides that no "person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."[3] *Id.* § 553(a)(1); *see also J & J Sports Prods., Inc. v. Crazy Willy's Bar, Lounge & Rest., Inc.*, No. 17-CV-1192, 2018 WL 3629595, at *3 (E.D.N.Y. July 31, 2018); *J & J Sports Prods., Inc. v. Monte Limar Sports Bar, Inc.*, No. 15-CV-3771, 2017 WL 933079, at *2 (E.D.N.Y. Mar. 8, 2017).

A plaintiff may seek damages for violations of section 605 based on theories of "contributory infringement" or "vicarious liability." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997); *Crazy Willy's*, 2018 WL 3629595, at *3. Contributory infringement arises when a defendant authorizes the violations. *Softel*, 118 F.3d at

---

[3] Although Plaintiff brings claims under both sections 553 and 605 of the FCA, "the court should award damages only under [s]ection 605" when both provisions are violated by the same conduct. *J & J Sports Prod., Inc. v. El Ojo Aqua Corp.*, 13-CV-6173, 2014 WL 4700014, at *2 (E.D.N.Y. Aug. 29, 2014), *report and recommendation adopted*, 2014 WL 4699704 (E.D.N.Y. Sept. 22, 2014) (citing cases). Because Plaintiff is entitled to damages under section 605, the Court declines to address Plaintiff's claims under section 553.

971. Vicarious liability attaches when the "defendant had a 'right and ability to supervise that coalesced with an obvious and direct financial interest'" in the infringing activities. *Crazy Willy's*, 2018 WL 3629595, at *3 (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)).

Plaintiff's allegations are insufficient to confer contributory or vicarious liability. The Complaint only provides conclusory, formulaic recitations of the elements of individual liability. Plaintiff fails to provide any specific allegations that the Individual Defendants supervised the statutory violation. In addition, Plaintiff assumes the right and ability to supervise the infringing conduct merely based on the Individual Defendants' positions as officers or directors. As Plaintiff acknowledges, district courts within this Circuit have typically found these formulaic allegations insufficient to confer individual liability under either theory.[4] (*See* Pl. Obj. 4); *J & J Sports Prods. Inc. v. Los Toritos Bar Rest. Inc.*, No. 15-CV-6517, 2017 WL 4838819, at *4 (E.D.N.Y. Sept. 11, 2017) (declining to impose individual liability under like circumstances), *report and recommendation adopted*, 2017 WL 4838758 (E.D.N.Y. Oct. 24, 2017).

The Court, however, declines to vacate the entry of default at this time despite having the authority to do so *sua sponte* for good cause. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) ("[W]e believe that the district court had the authority to set aside *sua sponte* an entry of default . . . for good cause."); *Feliz v. Kintock Grp.*, 297 F. App'x 131, 137 (3d Cir. 2008) (same). Entries of default are typically vacated upon a showing of good cause by defendants. The Court does not see a compelling

---

[4] District courts in this Circuit have also found no "obvious and direct financial interest" under circumstances similar to this case, e.g., where there is no cover charge, large crowd, or other evidence to suggest increases in prices for the event or purchase requirements. *See, e.g.*, *J & J Sports Prods., Inc. v. Mar Y Las Estrellas Rest. Corp*, No. 17-CV-1190, 2018 WL 4583489, at *4 (E.D.N.Y. Sept. 25, 2018).

reason to address the potential vacatur of the entry of default at this time, but will consider the issue upon motion by the Individual Defendants or *sua sponte* if deemed necessary at a later time. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) ("Under Rule 55(c), the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented."); *see also* 10A C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2696 (4th ed. 2019) ("Relief from a default entry may be granted under Rule 55(c) for 'good cause.' This requires the moving party to provide an explanation for the default or to give reasons why vacation of the default entry would serve the interests of justice.").

### ii. Damages

Having established liability with respect to Brooklyn Exposure, Plaintiff is entitled to damages.

Even upon default, courts are required to conduct an independent evidentiary determination to ascertain the amount of damages. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). An award of damages must be based on evidence that "provide[s] a sufficient basis from which to evaluate the fairness of the proposed sum." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). The court must ascertain the amount of damages "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (providing that a court may rely on affidavits and documentary evidence when evaluating a proposed damages award).

## 1. Statutory damages

Plaintiff requests statutory damages in the amount of $6,000, based on multiplying by three the $2,000 license fee that Brooklyn Exposure would have had to pay. (Pl. Obj. 10.)

Under section 605, an aggrieved party may elect to recover either statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). If a plaintiff elects to recover statutory damages, the plaintiff may recover, per violation, "a sum of not less than $1,000 or more than $10,000, as the court considers just." *Id.* § 605(e)(3)(C)(i)(II); *Time Warner Cable of N.Y.C. v. Sanchez*, 2003 WL 21744089, at *3 (S.D.N.Y. July 8, 2003) (noting that the amount of statutory damages under Section 605 are within the sound discretion of the court).

Courts in this Circuit typically award statutory damages based on one of two methodologies: the "flat fee" method or the "per-person" method. *J & J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6506, 2016 WL 6905946, at *4 (E.D.N.Y. Nov. 23, 2016) (citing *J & J Sports Prods., Inc. v. McAdam*, No. 15-CV-5461, 2015 WL 8483362, at *4 (E.D.N.Y. Dec. 9, 2015)). Under the "flat-fee" method, the court calculates the amount of damages based on the amount of the licensing fee defendants would have had to pay to legally show the specific event at issue. *Id.* Under the "per-person" method, the court calculates damages based on the number of consumers who watched the unauthorized transmittal of the event, multiplied by the amount a residential consumer would have paid to watch the event. *Id.* Upon calculating damages under both methods, courts grant the higher of the two amounts. *Id.*

As an initial matter, although there may be a good-faith dispute as to the optimal methodology in calculating statutory damages under the FCA, the Court declines to depart from the dominant view in the absence of unique circumstances in comparison to typical cases of this type. *See also* 47 U.S.C. § 605(e)(3)(C)(i)(II) (granting broad discretion to courts in the award of

statutory damages).

Plaintiff is entitled to $2,000 in statutory damages under the flat-fee method, the amount that Defendants would have had to pay to broadcast the Event lawfully. Because Plaintiff has failed to provide any *evidence* of an appropriate per-person residential fee, awarding damages under the per-person method is inappropriate. *See Credit Lyonnais Sec.*, 183 F.3d at 155 (holding district court erred in awarding damages based on "insufficient evidence"); *Joe Hand Promotions, Inc. v. Kings Point Rest., Inc.*, No. 17-CV-01870, 2017 WL 6611705, at *5 (E.D.N.Y. Nov. 3, 2017) ("[A]pplying the second method would be impracticable given the information filed with the Court. The Court received no information regarding the amount charged to individuals wishing to watch the event in residences."), *report and recommendation adopted*, 2017 WL 6611571 (E.D.N.Y. Dec. 27, 2017).

### 2. Enhanced damages

Plaintiff requests enhanced damages in the amount of $18,000 based on Brooklyn Exposure's alleged willful conduct, applying a multiplier of three to the statutory damages award. (Pl. Obj. 13.)

In addition to statutory damages, section 605 provides courts with the discretion to increase the award of damages upon a finding that a violation of the FCA was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Upon a finding of willfulness, courts consider several factors in determining whether willful conduct justifies an award of enhanced damages: "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and (v) defendant's collection of a cover charge or premiums for food and drinks." *Monte Limar*

*Sports Bar Inc.*, 2017 WL 933079, at *5 (citing *J & J Sports Prod., Inc. v. Big Daddy's Theme Palace, Inc.*, No. 14-CV-2765, 2015 WL 58606, at *5 (E.D.N.Y. Jan. 5, 2015)). The amount of the award cannot be greater than $100,000. *Id.*

The Court awards $2,000 in enhanced damages. Plaintiff has provided evidence that its signals could not have been intercepted innocently or accidentally without willful conduct, given the special encryption used to protect them from interception. *See J & J Sports Prod., Inc. v. McAdam*, No. 14-CV-5461, 2015 WL 8483362, at *5 (E.D.N.Y. Dec. 9, 2015) (finding willful violation where the event signal required affirmative unlawful conduct to decode). Plaintiff also provided sufficient evidence that the interception and broadcast was for a financial advantage. (Aff. of Joseph M. Gagliardi ("Gagliardi Aff.") ¶¶ 9–10, Docket Entry No. 14-2; Aff. of Gary Joseph ("Joseph Aff.) 1, Docket Entry No. 14-3; *see also* Compl. ¶¶ 13, 20.) Given the evidence of willful conduct, the Court finds an enhanced damages award equal to the statutory damages appropriate and adequate under the circumstances, i.e., no evidence of repeated violations, advertising or cover charge, and only twenty-five patrons. *See, e.g.*, *J & J Sports Prods., Inc. v. Orellana*, No. 18-CV-2052, 2019 WL 1177719, at *6 (E.D.N.Y. Mar. 13, 2019) (awarding enhanced damages equal to statutory damages for willful violation).

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Pollak's R&R in its entirety except as to the vacatur of the entry of default, and grants in part and denies in part Plaintiff's motion for default judgment without prejudice. The Court grants the motion for default judgment with respect to Brooklyn Exposure's liability, and finds that Plaintiff is entitled to $2,000 in statutory

damages and $2,000 in enhanced damages, but no pre-judgment interest.[5]  As to the Individual

Defendants, the Court denies the motion for default judgment.  Plaintiff may also request, by a

separate motion, to recover full costs and reasonable fees.

Dated:  September 27, 2019
        Brooklyn, New York

                                        SO ORDERED:
                                        s/ MKB

                                        _____
                                        MARGO K. BRODIE
                                        United States District Judge

---

[5]  Judge Pollak did not address and Plaintiff did not raise in its objections the issue of post-judgment interest.  Plaintiff is, however, entitled to post-judgment interest on damages.  *See* 28 U.S.C. § 1961(a).